Argued April 1, decided April 8, 1913.

### HOBSON *v.* DAVID.

(131 Pac. 297.)

**Brokers—Contract—Construction—Accounting.**

The owner of certain land, desiring to market it, executed a written contract by which plaintiff and defendants, other than the owner's administrator, agreed to sell the land, and, after the owner had been paid its value, interest, and expenses, all the proceeds of sales of remaining land should be equally divided between the owner and the brokers. After enough land had been sold to repay the owner, he conveyed the remaining land to one of the brokers; the conveyance having no relation to the original agreement and made for the sole benefit of such owner. Held, that the contract did not give the brokers any interest in the land, and hence plaintiff could not maintain a suit against the owner's administrator nor against his fellow brokers for an accounting without showing a performance of his part of the contract, to wit, that he had used his best endeavors to find purchasers and had aided in making sales.

From Multnomah:   JOHN P. KAVANAUGH, Judge.

Statement by MR. JUSTICE EAKIN.

This is a suit by Jesse Hobson against M. H. David, administrator of the estate of John B. David, deceased, A. P. Oliver and J. C. Colcord. The facts are as follows:

On July 8, 1889, John B. David entered into an agreement with the plaintiff and defendants Oliver and Colcord for the platting and sale of certain lands owned by the said John B. David. So far as involved here, the agreement is as follows:

"This agreement, made this 8th day of July, A. D. 1889, by and between John B. David and Juliette David, his wife, the parties of the first part, and A. P. Oliver, J. C. Colcord, and Jesse Hobson of the second part, witnesseth:   That whereas the said John B. David is the owner in fee simple of the following described tract of land, situated in the County of Yamhill, in the State of Oregon [here follows the description]. And whereas the

purchase price of said tracts of land is five thousand four hundred ($5,400) dollars. And whereas the said parties of the second part have contracted and agreed to superintend and manage the laying off and sale of said tracts as an addition to the said town of Newberg. Now, therefore, it is hereby contracted and agreed by and between the said parties of the second part as follows: (1) The said parties of the second part shall cause all of said tract not already surveyed and platted as a part of the town of Newberg to be surveyed and laid off as an addition to the said town of Newberg. (2) They shall use their best endeavors to find purchasers for all of said lots and blocks at and for such price as shall have been mutually agreed upon between the parties hereto. As fast as said lots and blocks shall be sold the said parties of the first part shall make and execute deeds to the purchasers, and shall collect and receive the purchase money for the same until it shall amount to such sum as shall pay the expenses of said survey and sale and to the parties of the first part said purchase price of five thousand and four hundred ($5,400) dollars, with interest on the same from June 25, 1889, at the rate of 8 per cent per annum, and thereafter all the proceeds of such sales shall be equally divided between the said John B. David, A. P. Oliver, J. C. Colcord, and Jesse Hobson, share and share alike.          (Signed)

> "Jno. B. David,
> "Juliette S. David,
> "A. P. Oliver,
> "Jesse Hobson,
> "J. C. Colcord."

Hobson, Oliver, and Colcord platted and surveyed said tract as an addition to the town of Newberg, and proceeded to make sales; but, on account of the financial stringency commencing with the years 1892 and 1893, few sales were made for many years, and about 1892 or 1893 the plaintiff removed from Newberg and ceased any effort to further the agreement. Oliver and Colcord continued to care for the property, making improvements, paying the taxes, and making such sales as they could, until, in 1908, much of the property had been sold,

and David was paid the $5,400 and interest.   In December, 1908, John B. David died, and defendant M. H. David was appointed administrator of his estate.   About the time of the death of John B. David, plaintiff called on the defendants for an accounting of the proceeds from the sales of the said land, and in May, 1910, brought this suit to compel such accounting.   On April 13, 1896, John B. David and wife conveyed the part of said land remaining unsold to defendant Oliver.   Plaintiff alleges it was so conveyed in trust for all of the parties to the agreement, which allegation is denied by the answer.

The answer admits the contract, and alleges that between 1891 and 1893 plaintiff abandoned the said enterprise and deserted Colcord and Oliver, leaving them to carry out the contract and to handle and look after the said property as best they could.   Through the growth of the town of Newberg, that part of said land now unsold is of the value of about $20,000.   Upon the trial, the court made findings in favor of defendants, and rendered a decree   dismissing the suit for want of equity.   Plaintiff appeals.                    AFFIRMED.

For appellant there was a brief over the names of *Mr. Cicero M. Idleman* and *Mr. D. P. Price*, with an oral argument by *Mr. Price*.

For respondents there was a brief over the names of *Messrs. Dolph, Mallory, Simon & Gearin* and *Messrs. Wilson & Neal*, with oral arguments by *Mr. John M. Gearin* and *Mr. Oscar A. Neal*.

MR. JUSTICE EAKIN delivered the opinion of the court.

The theory upon which the plaintiff asks to recover is that the agreement vested in each of the parties thereto an equal interest in the land.   Unless that is the effect of the agreement, plaintiff has no standing in the court. The land was the property of David, and the other parties had no money invested in it, nor claim upon it, other than as disclosed by this agreement.   David entered into

an agreement with them by which they were to put the land on the market and sell it; and after David was paid the value of the land, and the interest and expenses of putting it on the market and selling it were satisfied, all the proceeds of such sales should be divided equally between David, Hobson, Oliver, and Colcord. The conveyance of the unsold land by David to Oliver had no relation to the agreement of July 8, 1889, but was made for the sole benefit of David. That agreement does not transfer to Hobson, Oliver, and Colcord any title or interest in the land, but merely entitled them to a share of the proceeds from sales after certain claims were paid. Any land not sold remains the property of David, and Hobson, Oliver, and Colcord have no claim upon it, nor interest in it; and, before plaintiff can be entitled to an accounting against Oliver and Colcord, he must show that he has fulfilled his part of the agreement, namely, that he has used his best endeavors to find purchasers for the property, and that he aided in making the sales. As against David, his estate, or the land, plaintiff can have no claim; and he shows by his own testimony that he left the labor, expense, and burden of the sales and care of the property exclusively to Oliver, when he said:

"It was not expected that Mr. Colcord or myself would not be deeply interested in the sale of the property, because we had the utmost confidence in Mr. Oliver to carry on the business, and he did it about as well as it could be done."

He further testified that he most certainly did rely entirely upon Mr. Oliver taking care of that end of the business; that he knew that Oliver was able to handle that better than the three of them; and that from about the year 1892 or 1893 until this time he has not done anything to further the sale, but, in fact, abandoned the contract about that time. He has done nothing to aid in the disposition of the land, nor has he aided in making

the sales, and therefore has no claim for an accounting against Oliver and Colcord; and, having no equity in the land, there is no equity in his favor.

The decree is affirmed.                        AFFIRMED.